UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JULIAN FELIPE R.S.,[1]<br><br>Petitioner,<br><br>v.<br><br>WARDEN OF THE CALIFORNIA CITY DETENTION CENTER,<br><br>Respondent. | No. 1:26-cv-03809-TLN-JDP<br><br>A# 220-512-501<br><br>**ORDER** |

This matter is before the Court on Petitioner Julian Felipe R.S.'s ("Petitioner") Petition for Writ of Habeas Corpus. (ECF No. 1.) Respondent filed a Motion to Dismiss. (ECF No. 7.) For the reasons set forth below, the Court GRANTS the Petition for Writ of Habeas Corpus (ECF No. 1) and orders Respondents to immediately release Petitioner.

///

[1] As recommended by the Committee on Court Administration and Case Management of the Judicial Conference of the United States, the Court omits Petitioner's full name, using only his first name and last initials, to protect sensitive personal information. *See* Memorandum re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

## I. Factual and Procedural Background[2]

Petitioner entered the United States on or about October 10, 2021, by crossing the border into San Luis, Arizona without inspection. (ECF No. 7-2 at 2.) Petitioner was detained by immigration authorities but released on his own recognizance on January 26, 2022. (*Id.*; ECF No. 12-1 at 1.) Petitioner was issued a Warrant of Arrest/Notice to Appear under the Immigration and Nationality Act ("INA") § 212(a)(6)(A)(i). (ECF No. 7-2 at 2.) After his release, Petitioner lived in Illinois and Florida with his mother, father, and younger sister. (ECF No. 12 at 10.) He attended all hearings before the immigration court and complied with all conditions of his release. (*Id.*) Petitioner has a pending asylum application. (*Id.*) Petitioner has no prior criminal history. (ECF No. 7-2 at 2.)

On January 16, 2026, U.S. Border Patrol arrested Petitioner during a traffic stop. (*Id.*; ECF No. 1 at 5–6.) Thereafter, Petitioner was detained at Alligator Alcatraz in Florida. (ECF No. 7-1 at 1.) Petitioner subsequently filed a habeas petition in the Middle District of Florida. (*Id.*) On April 6, 2026, Judge Sheri Polster Chappell issued the following order granting the habeas petition:

> [R.S.]'s detention is governed by § 1226(a), not § 1225(b)(2). As a noncitizen detained under § 1226(a), [R.S.] has a right to a bond hearing. *See Jennings v. Rodriguez*, 583 U.S. 281, 306 (2018) ("Federal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention.") (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)).
>
> The Court will thus order the respondents to either bring [R.S.] before an immigration judge for an individualized bond hearing within ten days or release him. To satisfy this Order, the hearing must include—and the resulting order must reflect—consideration of evidence properly submitted by the petitioner and the factors announced in *In re Guerra*, 24 I. & N. Dec. 37 (BIA 2006), and [R.S.]'s counsel must be given at least 48 hours' notice of the hearing, but only if they enter their appearance in the Executive Office of Immigration Review's online filing system in time to receive the notice. The Court is aware the EOIR is the agency that conducts bond hearings, it is not a party to this action, and it may decide not to hold a hearing that satisfies these requirements. But, to be clear, subjecting [R.S.] to mandatory detention under § 1225(b)(2) is unlawful. If the respondents are unable to ensure [R.S.] receives a bond hearing that complies with this Order within ten days, they must

[2] These facts are either set forth in Respondent's briefing or are not disputed.

> release him. Accordingly, it is hereby ORDERED: Julian Felipe [R.S.]'s Petition for Writ of Habeas Corpus (Doc. 1) is GRANTED. (1) Within ten days of this Opinion and Order, the respondents shall either (1) bring [R.S.] for an individualized bond hearing before an immigration judge or (2) release [R.S.] under reasonable conditions of supervision.

(ECF No. 7-1 at 2–4.)

On April 16, 2026, Petitioner was provided a bond hearing where the immigration judge denied bond after determining that Petitioner was a flight risk. (ECF No. 7-4 at 1.) Petitioner was subsequently transferred to the California City Detention Facility in the Eastern District of California. (ECF No. 12 at 12.) On June 15, 2026, five months into Petitioner's detention, an immigration judge ordered Petitioner removed to Colombia. (ECF No. 14-1 at 6.) Petitioner is appealing the order of removal.[3] (ECF No. 16-3 at 2–16.)

On May 18, 2026, Petitioner filed a habeas petition and motion for TRO, claiming Respondent violated the INA and Fifth Amendment Due Process Clause. (ECF No. 1 at 6–7.)

## II. STANDARD OF LAW

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

---

[3] Although the Board of Immigration Appeals has not yet logged the appeal in the publicly available record, Petitioner submitted copies of his EOIR-26, Notice of Appeal from a Decision of an Immigration Judge; his EOIR-26A, Fee Waiver Request; and three supporting letters. (ECF No. 16-3 at 2–16.)

## III. ANALYSIS

Petitioner alleges his detention violates the INA and the Fifth Amendment Due Process Clause. (ECF No. 1 at 6–7.) Respondent initially argued that 8 U.S.C. § 1225(b)(2) mandates Petitioner's detention.[4] (ECF No. 7 at 2.) On July 21, 2026, however, Respondent moved to dissolve the No Transfer Order, contending that the immigration judge's June 15, 2026 removal order had become administratively final because Petitioner had not appealed it. (ECF No. 14 at 1–2; ECF No. 14-1 at 7.) Respondent therefore asserts that its authority to detain Petitioner has shifted to 8 U.S.C. § 1231(a)(2). (ECF No. 14 at 1–2.) Petitioner opposed the motion and maintained that he had timely appealed the removal order. (ECF No. 16.)

The Fifth Amendment Due Process Clause prohibits government deprivation of an individual's life, liberty, or property without due process of law. U.S. Const. amend. V; *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017). "[T]he Due Process Clause applies to all 'persons' within the United States, including noncitizens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693 (2001). These due process rights extend to immigration proceedings, including detention and deportation proceedings. *Id.* at 693–94; *see Demore v. Kim*, 538 U.S. 510, 523 (2003).

Courts examine procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989); *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies,

---

[4] Respondent also argues the petition should be dismissed because it constitutes a successive habeas petition that raises issues already conclusively resolved in the Petitioner's prior habeas proceeding, in which the Court granted Petitioner a bond hearing. (ECF No. 7 at 2.) Petitioner responds that the prior proceeding did not adjudicate his present due process claim. (ECF No. 12 at 32.) Respondent further argues Petitioner failed to exhaust his administrative remedies under the INA because he did not appeal his bond determination to the Board of Immigration Appeals. (ECF No. 7 at 2.) However, as discussed below, the Court finds relief warranted under Petitioner's procedural due process claim, which seeks the same relief as his INA claim. The Court therefore declines to consider arguments on Petitioner's INA claim in favor of judicial economy.

the question remains what process is due.”).

A. Liberty Interest

As for the first step, the Court finds Petitioner has established a protectable liberty interest. *See Rico-Tapia v. Smith*, No. CV 25-00379 SASP-KJM, 2025 WL 2950089, at *8 (D. Haw. Oct. 10, 2025) (noting “[e]ven where the revocation of a person’s freedom is authorized by statute, that person may retain a protected liberty interest under the Due Process Clause”). “[T]he government’s decision to release an individual from custody creates ‘an implicit promise,’ upon which that individual may rely, that their liberty ‘will be revoked only if [they] fail[ ] to live up to the . . . conditions [of release].” *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. July 24, 2025) (quoting *Morrissey*, 408 U.S. at 482) (modifications in original)). “Accordingly, a noncitizen released from custody pending removal proceedings has a protected liberty interest in remaining out of custody.” *Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC, 2025 WL 2637503, at *6 (N.D. Cal. Sept. 12, 2025). To determine whether an individual’s conditional release rises to the level of a protected liberty interest, courts have “compar[ed] the specific conditional release in the case before them with the liberty interest in parole as characterized by *Morrissey*.” *R.D.T.M. v. Wofford*, No. 1:25-cv-01141-KES-SKO, 2025 WL 2617255, at *3 (E.D. Cal. Sept 9, 2025).

Here, the Court finds Petitioner has a clear liberty interest, particularly after he was released by immigration authorities in 2022. (ECF No. 12-1 at 1.) Under *Morrisey*, this release implied a promise that he would not be re-detained, during the pendency of his immigration proceedings, if he abided by the terms of his release. Petitioner has a pending asylum application and has no prior criminal history. (ECF No. 12 at 10; ECF No. 7-2 at 2.) Nor does Respondent claim that he violated any conditions of his release. (*See generally* ECF No. 7.) As this Court has found previously, along with many other courts in this district when confronted with similar circumstances, Petitioner has a clear interest in his continued freedom as he awaits the outcome of his asylum proceedings. *See, e.g.*, *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) (noting the government’s actions in allowing petitioner to remain in the community for over five years strengthened petitioner’s liberty interest).

Respondent's arguments as to statutory authority do not defeat Petitioner's liberty interest. First, Respondent argues that Petitioner was subject to mandatory detention under 8 U.S.C. § 1225(b)(2) until his order became final on July 15, 2026. However, a federal court has already rejected this argument as to Petitioner, finding that Petitioner's detention is governed by 8 U.S.C. § 1226(a). (ECF No. 7-1 at 2–4 ("[R.S.]'s detention is governed by § 1226(a), not § 1225(b)(2). . . . [T]o be clear, subjecting [R.S.] to mandatory detention under § 1225(b)(2) is unlawful.").)

Second, Respondent argues that their detention authority for Petitioner has shifted to 8 U.S.C. § 1231(a)(2) because an immigration judge ordered Petitioner removed on June 15, 2026, and the order is final because no appeal was filed. (ECF No. 14 at 1–2; ECF No. 14-1 at 7.) Section 1231(a) mandates detention of noncitizens with final orders of removal. 8 U.S.C. § 1231(a). An immigration judge's removal order becomes final when the BIA dismisses an appeal, the noncitizen waives the right to appeal, or the time allotted for an appeal expires. *See* 8 C.F.R. § 1241.1. A Notice of Appeal must be filed no later than 30 calendar days after the immigration judge renders a decision. *See* 8 C.F.R. § 1003.38(b). The record establishes that Petitioner submitted his Notice of Appeal on July 11, 2026, and that the BIA received it on July 13, 2026, less than 30 days after the immigration judge entered the removal order.[5] (*See* ECF No. 16-2 at 9; ECF No. 16-3 at 2–16.) Because Petitioner timely appealed, the removal order will not become final unless and until the BIA dismisses the appeal. Thus, § 1231 does not provide statutory authority for Petitioner's detention and § 1226(a) continues to govern his detention.

With a clear liberty interest, the Court next turns to the procedural safeguards that were owed to Petitioner.

[5] In their status update, Respondent acknowledges that Petitioner's opposition informed them that Petitioner had appealed the immigration judge's decision. (ECF No. 17.) Respondent further states that, after filing their motion to dissolve, they learned that the BIA may take up to fourteen days to receive and log an appeal because of the growing volume of appeals. (Id.) Respondents therefore request fourteen additional calendar days to confirm the status of Petitioner's appeal. (Id.) Petitioner's counsel, however, has submitted a copy of Petitioner's Notice of Appeal and attested to its filing. (See generally ECF No. 16.) The Court therefore finds that further delay and an additional status report are unnecessary and denies Respondent's request as moot.

B. Procedures Required

As to the second step — what procedures or process is due — the Court considers three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). As set forth below, the Court finds Respondent did not provide appropriate process. The Court will address each of these factors in turn.

*i. Private Interest*

As explained above, Petitioner has a substantial private interest in remaining free from detention that is unquestionably affected by Respondent's actions in detaining him. "Freedom from imprisonment — from government custody, detention, or other forms of physical restraint — lies at the heart of the liberty [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. The amount of time Petitioner spent at liberty underscores the gravity of its loss. Accordingly, this factor weighs in favor of finding Petitioner's private interest has been impacted by his detention. *See Manzanarez v. Bondi*, No. 1:25-CV-01536-DC-CKD (HC), 2025 WL 3247258, at *4 (E.D. Cal. Nov. 20, 2025) (finding similarly).

*ii. Risk of Erroneous Deprivation*

The risk of erroneous deprivation is considerable and the probative value of additional procedural safeguards is high given that Petitioner was given negligible process. *See A.E. v. Andrews*, No. 1:25-CV-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025). Because civil immigration detention is "nonpunitive in purpose and effect," a "special justification" must outweigh Petitioner's protected liberty interest for his detention to comport with due process. *Zadvydas*, 533 U.S. at 690. While "[t]he government has legitimate interests in protecting the public and in ensuring that noncitizens in removal proceedings appear for hearings," Petitioner has received minimal procedural safeguards to ensure any detention is reasonably related to those purposes. *Hernandez*, 872 F.3d 976.

As an initial matter, in 2022, Respondents determined Petitioner was not a danger to the community or a flight risk in order to release him from custody. *See* 8 C.F.R. § 1236.1(c)(8). Yet, as Petitioner points out, Respondents offer no new evidence or materially changed circumstances to justify a reconsideration of Respondents' initial findings. (ECF No. 12 at 17 (citing ECF No. 7).) Nor do Respondents argue that Petitioner is a danger or a flight risk. (ECF No. 7.) Rather, Petitioner's conduct over the last four years only strengthens the original findings — Petitioner now has a record of living lawfully and in compliance with the conditions of his release and immigration requirements for years. (*Id.*) Therefore, procedural safeguards are highly necessary to prevent erroneous deprivation of liberty in this case.

In regards to the procedural safeguards afforded to Petitioner, there is no dispute Petitioner did not receive a pre-deprivation hearing. There is no evidence in the record that Petitioner was provided an individualized initial custody determination as required under 8 U.S.C. § 1226(a). Additionally, no process was made available for Petitioner to be heard for nearly four months until he was forced to seek judicial relief and a federal court ordered Respondent to provide the bond hearing to which he was statutorily entitled. (ECF No. 7-1 at 4; ECF No. 7-4 at 1.) Even when Petitioner received a bond hearing by court order, the hearing was constitutionally deficient as a matter of law and violated the court's order.[6] Judge Chappell's order requiring a bond hearing stated: "To satisfy this Order, the hearing must include—and the resulting order must reflect—consideration of evidence properly submitted by the petitioner and the factors announce in *In re Guerra*, 24 I. & N. Dec. 37 (BIA 2006)[.]" (ECF No. 7-1 at 3.) Yet, the immigration judge's order deviates from a form by template by only two words: "Flight Risk."

---

[6] The fact that Petitioner was provided with a post-deprivation court-ordered bond hearing does not automatically cure the initial constitutional violation of unlawfully revoking Petitioner's liberty and detaining him without any process for nearly four months. To hold otherwise would lead to absurd results. The government would have a blank check to unilaterally detain every noncitizen without providing any process and hold them indeterminately without any process until the individual seeks relief from a federal court. Only after a federal judge orders individual relief would the government be compelled to provide a modicum of process. This would allow the government to flout their own regulations with the comfort that, only after judicial intervention and expenditure of resources, will they be brought into compliance with federal law. The relief for a constitutional violation cannot be to merely bring the government into compliance — it must be to restore the liberty that was lost.

(ECF No. 7-4.) There is no mention of evidence submitted, considered, or weighed; no mention of Petitioner's conduct of compliance for four years. Indeed, there is no mention of the *Guerra* factors as required by BIA standards and Judge Chappell's order. (ECF No. 7-1 at 3.) The immigration judge simply concluded, without any explanation, that Petitioner was not entitled to bond. Such a failure to explain a ruling, particularly in light of a court order requiring an explanation, is an abuse of discretion by the immigration judge. *See Hernandez Arechiga v. Bowen*, No. 26-CV-1516, 2026 WL 1500398, at *4 (C.D. Cal. May 26, 2026) (finding abuse of discretion where IJ denied bond based on conclusory findings without explanation and collecting cases finding similarly); *see also Sagaydak v. Gonzales*, 405 F.3d 1035, 1040 (9th Cir. 2005) (citing *Yepes–Prado v. INS*, 10 F.3d 1363, 1370 (9th Cir. 1993) ("Immigration judges, although given significant discretion, cannot reach their decisions capriciously and must indicate how they weighed the factors involved and how they arrived at their conclusion.") (cleaned up); *Barnica-Lopez v. Garland*, 59 F.4th 520, 530 (1st Cir. 2023) (citing *Pan v. Gonzales*, 489 F.3d 80, 87 (1st Cir. 2007) (IJs must give "reasoned consideration to the evidence as a whole, [make] supportable findings, and adequately explain[] its reasoning"). Therefore, the procedural safeguards provided to Petitioner while in custody were wholly insufficient to ensure he was not erroneously deprived of his liberty.

*iii. Government's Interest*

Finally, the government's interest in detaining Petitioner without an adequate bond hearing is low, and effort and cost required to provide Petitioner with procedural safeguards are minimal. *See Garcia v. Andrews*, No. 2:25-CV-01884-TLN-SCR, 2025 WL 1927596, at *5 (E.D. Cal. July 14, 2025). Notice and custody determination hearings are routine processes for Respondent. Indeed, these are the very processes owed to Petitioner under 8 U.S.C. § 1226(a), which Judge Chappell found applies to him. (ECF No. 7-1 at 1–4.) Any delay in detention (if justified) for the time to provide notice and a hearing would have been minimal. Any burden associated with the provision of these safeguards does not outweigh Petitioner's liberty interest and the risk of erroneous deprivation.

The Court finds that each of the above factors weigh in Petitioner's favor and under these

circumstances Respondent was required to provide notice and a pre-deprivation hearing. The United States Supreme Court "usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (emphasis in original). The Court describes post-deprivation remedies as the "special case" where those are "the only remedies the State could be expected to provide." *Id.* at 129. Here — where there is no criminal history and no individualized changed circumstances to justify re-detention — the Court finds pre-deprivation notice and a hearing are possible and valuable to preventing erroneous deprivation of liberty.

Yet, Respondent provided neither notice nor a pre-deprivation hearing. Moreover, Respondent did not provide sufficient procedural protections even after a court order. Petitioner's detention thus violates the Fifth Amendment Due Process Clause.

## IV. Conclusion

For the foregoing reasons, the Court GRANTS the Petition for Writ of Habeas Corpus. (ECF No. 1.) IT IS HEREBY ORDERED:

1. Respondent must IMMEDIATELY RELEASE Petitioner Julian Felipe R.S. (**A # 220-512-501**) from custody under the same conditions he was released prior to his current detention. At the time of release, Respondent must return all of Petitioner's documents and possessions. **Respondent must file a notice certifying compliance with this provision of the Court's Order within two (2) court days from the date of this Order.**
2. Respondent is ENJOINED AND RESTRAINED from re-arresting or re-detaining Petitioner absent compliance with constitutional protections, including a minimum of seven-days' notice and a pre-deprivation hearing before a neutral fact-finder where (a) Respondent shows material changed circumstances demonstrate a significant likelihood of Petitioner's removal in the reasonably foreseeable future, or (b) Respondent demonstrates by clear and convincing evidence that the government's interest in protecting the public and/or ensuring Petitioner appears at future immigration proceedings outweighs Petitioner's constitutionally protected

interest in remaining free from detention. *See Zadvydas*, 533 U.S. at 690; *Hernandez*, 872 F.3d at 990. At any such hearing, Petitioner shall be allowed to have counsel present.

3. Petitioner's Motion for TRO is DENIED as moot. (ECF No. 2.)

4. Respondent's Motion to Dismiss (ECF No. 7) and Motion to Dissolve the No Transfer Order (ECF No. 14) are DENIED.

5. **The Clerk of Court is directed to serve California City Detention Center with a copy of this Order.**

6. The Clerk of Court shall enter judgment in favor of Petitioner and close this case.

IT IS SO ORDERED.

Date: July 23, 2026

TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE